IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE COMMONWEALTH OF VIRGINIA, | No. C 11-02782 SI |
| Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| MCKESSON CORPORATION, ROBERT JAMES, and GREG STEPHEN YONKO. | |
| Defendants. | |

On August 15, 2011, defendants filed a motion to dismiss plaintiff's claims alleging violations of the Virginia Fraud Statute (Va. Code § 32.1-312) and common law conspiracy to defraud. Defendants seek dismissal of the claims as alleged against all defendants, including defendants Robert James and Greg Stephen Yonko (the "Individual Defendants"), and defendant McKesson Corporation ("McKesson"). The motion is set for hearing on October 14, 2011. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument and hereby VACATES the hearing.

**BACKGROUND**

Robert James is McKesson's Vice President of Brand Product Management; Greg Stephen Yonko is McKesson's Senior Vice President of Purchasing and Pharma Finance. Plaintiff, the Commonwealth of Virginia, alleges that the individual defendants and McKesson engaged in a conspiracy with First DataBank, Inc. ("FDB") to inflate the amount that Virginia's Medicaid program paid for brand-name prescription drugs. Compl. ¶ 1-2. The general subject of this litigation has been discussed in detail in several orders issued in connection with *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, MDL-1456 (Hon. Patti B. Saris, D.Mass.).

Under the current pharmaceutical drug pricing structure, pharmacies buy drugs from wholesalers (such as McKesson) at the wholesale acquisition cost ("WAC") and are reimbursed for the distribution of the drugs by Virginia's Medicaid agency at the average wholesale price ("AWP"). *Id.* ¶ 4. The AWPs are compiled and published by data companies, including FDB. *Id.* ¶¶ 10-11. Virginia alleges that, starting in late 2001, the Individual Defendants, as agents of McKesson, constructed a scheme with FDB to mark up the AWPs of drugs to extract excess payments from Virginia's Medicaid agency to McKesson's pharmacy customers. Because the margin between the WACs and the AWPs represent the pharmacies' profits, this artificial mark-up resulted in increased profits for the pharmacies at Virginia's expense. *Id.* ¶¶ 15, 26, 41-42.

Virginia alleges that defendants implemented this scheme in order to "provide a benefit to those important retail pharmacy clients." *Id.* ¶ 26. By providing the benefit of increased profits to their customers, McKesson was able to "distinguish itself from other wholesalers by providing a more enhanced relationship with customers," and created "goodwill" for itself from its customers. *Id.* ¶¶ 27, 125.

Based on these allegations, Virginia asserts seven causes of action against McKesson: civil violations of RICO (Counts I and II); violations of the Virginia Fraud Against the Taxpayers Act (Counts III, IV, VI); violations of the Virginia Fraud Statute (Count VI); and common law civil conspiracy (Count VII). Virginia also asserts the claims of violations of the Virginia Fraud Statute and common law civil conspiracy against defendants Robert James and Greg Stephen Yonko. At issue in the instant motion to dismiss are the Virginia Fraud Statute and civil conspiracy claims (Counts VI and VII) against McKesson and the Individual Defendants.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."

2

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must provide "more than labels and conclusions," and must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc*., 536 F.3d 1049, 1055 (9th Cir. 2008). .

## DISCUSSION

### I. The Virginia Fraud Statute Claim

The Virginia Fraud Statute states that:

> No person, agency or institution . . . *on behalf of himself or others*, whether under a contract or otherwise, shall obtain or attempt to obtain benefits or payments where the Commonwealth directly or indirectly provides any portion of the benefits or payments pursuant to the Plan for Medical Assistance . . . in a greater amount than that to which entitled by: (1) knowingly and willful making or causing to be made any false statement or false representation of material fact; (2) knowingly and willfully concealing or causing to be concealed any material facts; (3) or knowingly and willfully engaging in any fraudulent scheme or device.

Va. Code section 32.1-312(A) (emphasis added). Subsection 32.1-312(B) provides that any person violating subsection (A) will be "liable for repayment of any excess benefits or payments received," as well as "subject to civil penalties." The civil penalties sought may not exceed three times the amount of "excess benefits or payments." 32.1-312(B)(ii).

Defendants move to dismiss plaintiff's claim brought under this statute. They contend that the statute does not apply to the alleged actions of defendants because, even accepting the plaintiff's allegations as true, only the pharmacies received "benefits or payments" from Virginia and no defendants sought to "obtain or attempt to obtain benefits or payments" for themselves. Def.'s Mot. to Dismiss, 4-6. Defendants contend that the qualifier, "on behalf of himself or others," was included to ensure that the statute captures not only frauds by providers themselves, but also agents of providers who submitted false claims on their behalf, and must be so limited. *Id.* at 6. Plaintiff argues that the

plain language of the statute reaches the defendants, who committed the fraud "on behalf of" their retail clients. Pl.'s Opp., 12-13. The statute not only encompasses *recipients* of excess payment, plaintiffs argue, but those *responsible* for the overpayment as well. *Id.* at 12.

The Court agrees with plaintiff. When the language of the statute is unambiguous, courts "are bound by the plain meaning of that language." *Ruby v. Cashnet, Inc.,* 708 S.E.2d 871, 873 (Va. 2011). The plain language of the statute encompasses the alleged activity of the defendants. Va. Code section 32.1-312(A) covers those who, "on behalf of [themselves] or others, whether under a contract or otherwise, obtain or attempt to obtain benefits or payments where the Commonwealth directly or indirectly provides any portion of the benefits or payments." Nowhere does the statute limit the phrase "on behalf of others," to include only agents acting on behalf of the payment recipients.

Here, plaintiff sufficiently alleges that the individual defendants, as agents of McKesson, created a fraudulent scheme to extract excess payments from Virginia to their customers. *Id*. ¶¶ 26, 142 (internal communications "candidly admitted that the change [in McKesson's AWP mark-ups] was made to increase its customers' profit margins."). Plaintiff cites communications from defendants that show attempts to increase the margin between the AWP and WAC of certain drugs. Compl. ¶ 142 (letter from defendant James stating "we played a major role (and still do) in normalizing the AWP's on Brand Pharmaceuticals from 16 2/3% to 20% spreads. This has had a huge impact on the profitability of our customers.") Plaintiff also provides internal McKesson communications showing the defendants sought advantages from their alleged scheme. *See, e.g.*, Compl. ¶ 86 (Letter from Yonko to James stating, "I also think we should start communicating any AWP changes so customer[s] know what's going on, the end result should be beneficial"; an employee encouraging James, "This sounds like something we should at least [be] quietly communicating to our customers in order to get some mileage from it[.]")

The Complaint also sufficiently alleges that defendants "knowingly and willfully" engaged in this fraudulent scheme by working "directly with First Data to increase AWPs." *Id.* ¶ 141. In its 93-page complaint, Virginia alleges that defendants intentionally raised McKesson's internal mark-ups in an effort to increase AWPs, *id.* ¶ 138, and that defendants collaborated with FDB to increase the published AWPs. *Id.* ¶ 144-46, 162-63. Taken as true, these facts state a claim for relief under Virginia Code section 32.1-312 because they demonstrate that defendants engaged in a fraudulent scheme to

4

obtain benefits from Virginia on behalf of their pharmacy clients.

Defendants also argue that subsection (B) of the statute, which sets forth the penalties for violations of subsection (A), limits the reach of the statute. Def.'s Mot. to Dismiss at 6. Defendants contend that because subsection (B)(i) allows the Commonwealth to recover for "excess payments received," it cannot be interpreted to encompass defendants who did not actually "receive" any benefits or payments. *Id.* This argument fails for two reasons. First, defendant's interpretation would also preclude the Commonwealth from recovering from those who unsuccessfully attempted to obtain fraudulent payments but failed to do so. Yet subsection (A) explicitly reaches those who "attempt to obtain" excessive payments. Va. Code section 32.1-312(A). Second, subsection (B)(ii) allows for "civil penalties" in addition to the repayment set forth in (B)(i). While it is true that the civil penalties sought should not "[e]xceed three times the amount of such excess benefits or payments," the statute never requires that the "benefits or payments" be received by the actual defendant. Where defendants allegedly caused excessive payment to others, the penalty limitation would refer to the benefits or payments received by the "others," here, e.g., the pharmacies.

## II.  Common Law Civil Conspiracy

Defendants also seek dismissal of Count VII, plaintiff's civil conspiracy claim, on the basis that "Virginia has failed to allege a viable predicate," i.e., has failed to state a claim under the Virginia Fraud Statute. Since the Court has found that, at this juncture, plaintiff has in fact stated a claim under the Virginia Fraud Statute, defendants' derivative argument is rejected as well.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motion to dismiss.

**IT IS SO ORDERED.**

Dated: October 13, 2011

SUSAN ILLSTON
United States District Judge