IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THE COMMONWEALTH OF VIRGINIA,

        Plaintiff,

   v.

MCKESSON CORPORATION, ROBERT JAMES, and GREG STEPHEN YONKO.

        Defendants.
                                  /

No. C 11-02782 SI

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On February 22, 2013, the individual defendants, Robert James and Greg Stephen Yonko, filed a motion for summary judgment, arguing that plaintiff's claims are barred by the statute of limitations. The motion is set for hearing on March 29, 2013. Pursuant to Civil Local Rule 7-1(b), the Court finds the matter appropriate for resolution without oral argument and hereby VACATES the hearing. After considering the papers and arguments of the parties, the Court GRANTS the motion for summary judgment, for the reasons set forth below.

**BACKGROUND**

Robert James is McKesson's Vice President of Brand Product Management; Greg Stephen Yonko is McKesson's Senior Vice President of Purchasing and Pharma Finance. Plaintiff, the Commonwealth of Virginia, alleges that the individual defendants and McKesson engaged in a conspiracy with First DataBank, Inc. ("FDB") to inflate the amount that Virginia's Medicaid program paid for brand-name prescription drugs. Compl. ¶ 1-2. The general subject of this litigation has been discussed in detail in several orders issued in connection with *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, MDL-1456 (Hon. Patti B. Saris, D. Mass.).

Under the current pharmaceutical drug pricing structure, pharmacies buy drugs from wholesalers

(such as McKesson) at the wholesale acquisition cost ("WAC") and are reimbursed for the distribution of the drugs by Virginia's Medicaid agency at the average wholesale price ("AWP"). *Id.* ¶ 4. The AWPs are compiled and published by data companies, including FDB. *Id.* ¶¶ 10-11. Virginia alleges that, starting in late 2001, the individual defendants, as agents of McKesson, constructed a scheme with FDB to mark up the AWPs of drugs to extract excess payments from Virginia's Medicaid agency to McKesson's pharmacy customers. Because the margin between the WACs and the AWPs represents the pharmacies' profits, this artificial mark-up resulted in increased profits for the pharmacies at Virginia's expense. *Id.* ¶¶ 15, 26, 41-42.

On June 8, 2011, Virginia filed this case, alleging seven causes of action. Virginia asserts two against the individual defendants: violation of the Virginia Fraud Statute and common law civil conspiracy to defraud (Counts VI and VII). The individual defendants argue that these claims are barred by the statute of limitations.

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *See T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49 (2d Cir. 1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

**I.    Choice of Law for Statute of Limitations**

First, this Court must decide whether to apply the Virginia or California statute of limitations to the claims against the individual defendants. Originally under Virginia law, there was no statute of limitations for claims under the Virginia Fraud Statute, but in 2007, the act was amended to include a six-year statute of limitations. VA. CODE ANN. § 32.1-312. Under California law, the statute of limitations is three years for fraud claims. Cal. Civ. Proc. Code § 338.

"In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). Even if the substantive law is a foreign state's statute, California courts apply the "governmental interest" test to determine which state's statute of limitations applies. *Deutsch v. Turner Corp.*, 324 F.3d 692, 716 (9th Cir. 2003). The "governmental interest" test is "an analysis of the respective interests of the states involved." *Id.* (quoting *Hurtado v. Superior Court*, 11 Cal. 3d 574, 579 (1974)). First, the court must determine if both states have an interest in the law; if there is a true conflict, then the court must determine which state has the greater interest. *Liew v. Official Receiver & Liquidator*, 685 F.2d 1192, 1195-96 (9th Cir.1982).

California has "a substantial interest in preventing the prosecution in its courts of claims which it deems to be 'stale.'" *Deutsch*, 324 F.3d at 716 (quoting Restatement (Second) of Conflict of Laws § 142, cmt. f (1988)). Statutes of limitations protect both California courts and California residents from "'the burdens associated with the prosecution of stale cases in which memories have faded and evidence has been lost.'" *Nelson v. International Paint Co.*, 716 F.2d 640, 644-45 (9th Cir. 1983) (quoting *Ashland Chemical Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982)). Therefore, California courts

3

will almost uniformly apply California law if the statute of limitations is shorter, unless there is an "extraordinarily strong interest of a foreign state." *Deutsch*, 324 F.3d at 716. *Compare Nelson*, 716 F.2d at 645 (holding that the California statute of limitations applied when the foreign state had no defendants and was not the forum, because it had no interest in applying its statute of limitations), *with Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 485 (9th Cir. 1987) (distinguishing *Nelson* because the California residents were the plaintiffs, not the defendants, the one year difference between the limitations period of California and the foreign state was insubstantial, and the foreign state had an interest in protecting its highways).

Plaintiff argues that Virginia in this case has a strong interest in protecting its citizens; its interest is so strong that it is litigating its claims in its sovereign capacity. However, California has an interest in both conserving judicial resources and protecting its citizens from stale claims. *Nelson*, 716 F.2d at 644-45 . This case parallels *Nelson* since the forum is in California, and the defendants are California residents. Virginia's interest in enforcing its laws does not overcome California's greater interest in protecting its citizens and its courts. Therefore, the Court shall apply the California statute of limitations.

## II.     Last Overt Act

The statute of limitations runs from the "last overt act of a conspiracy." *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987). Virginia argues that its claims are within California's three-year limitations period, because the last overt act of the conspiracy occurred within three years of the filing of this suit (i.e., after June 8, 2008). Defendants argue that the conspiracy ended when FDB withdrew from the conspiracy in its settlement agreement, which occurred in October, 2006,outside the statute of limitations period.

In *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, No. 05-11148-PBS (D. Mass.) ("*NEC*"), the class of plaintiffs alleged the same conspiracy between McKesson and FDB to artificially inflate the amount paid for prescription drugs by increasing the AWPs of the drugs. Flum Decl. Ex. 1 ("*NEC* Compl."). On October 4, 2006, FDB filed a joint motion for preliminary approval of a settlement with the class plaintiffs in *NEC*. *See Nat'l Ass'n of Chain Drug Stores v. NEC*, 582 F.3d

4

30, 37 (1st Cir. 2009) ("*NACDS*"); *NEC*, 602 F. Supp. 2d 277, 278 (D. Mass. 2009). "[T]he central provision" of the settlement "was that First DataBank agreed to 'rollback' its published AWP figures for all drug products . . . with a mark-up higher than 1.2 down to a 1.2 mark-up." *NACDS*, 582 F.3d at 37. The district court granted preliminary approval of the *NEC* settlement on November 22, 2006; after several amendments, the district court issued its final approval order on March 17, 2009. *Id.* at 37-38; *NEC*, 602 F. Supp. 2d at 277-79.

A defendant can establish withdrawal from a conspiracy in various ways. One way is through proof of (1) "[a]ffirmative acts inconsistent with the object of the conspiracy," (2) which were "communicated in a manner reasonably calculated to reach co-conspirators." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464-65 (1978). In *Drug Mart Pharmacy Corp. v. Am. Home Products Corp.*, 288 F. Supp. 2d 325, 329 (E.D.N.Y. 2003), the court found that the "conclusion is inescapable" that the defendants had withdrawn from a discriminatory pricing conspiracy when they committed to changing their pricing scheme in a settlement agreement. The court found that both prongs of *Gypsum* were met: "[i]t is difficult to conceive of a more explicit disavowal of allegedly conspiratorial conduct than is expressed by the terms of the Amended Settlement Agreement . . . . That the Agreement was made known to the other defendants in the proceeding required by Rule 23 Fed. R. Civ. P. is not in dispute."

The Court finds that FDB withdrew from the conspiracy when it reached a settlement agreement in *NEC*. First, filing the settlement agreement is an "affirmative act" that is "inconsistent" with the alleged object of the conspiracy, because FDB agreed to "rollback" the prices to the levels prior to the inflated markups. Second, the settlement agreement was calculated to reach McKesson as a co-defendant and the individual defendants because is was a public filing. Therefore, the requirements under *Gypsum* are met, and FDB withdrew from the conspiracy on October 4, 2006, more than three years before Virginia filed this suit.

Virginia argues that, unlike the defendants in *Drug Mart*, there is insufficient evidence for defendants in this case to show that they did not return to the illegal acts of the conspiracy after the announcement of the settlement agreement. It argues that the case is more similar to *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055 (N.D. Cal. 2011). In *In re TFT-LCD*, the defendant

5

argued that it was entitled to summary judgment because it had informed the government of the conspiracy outside of the statute of limitations period. This Court denied the motion for summary judgment in part because plaintiffs had been denied discovery for the period after defendant had informed the government of the conspiracy. 820 F. Supp. 2d at 1061 ("Given that plaintiffs have had no means of exploring this information, the Court cannot justify removing this issue from the jury's consideration on such a scant record."). Virginia argues that a jury could similarly find that defendants re-engaged in the conspiracy after the settlement agreement.

However, all of Virginia's evidence regarding the conspiracy dates from before the settlement agreement in 2006. Virginia therefore has no factual basis for the assertion that a jury may find that the conspiracy continued after the announcement of the settlement. This bare allegation of a continued conspiracy after a clear withdrawal is insufficient. "Courts should not permit an inference of a conspiracy when such an inference is not reasonable to draw." *Drug Mart*, 288 F. Supp. 2d at 333 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 593 (1986)). Here, unlike in *In re TFT-LCD*, plaintiff has had an ample opportunity to discover affirmative evidence of continued violations after the withdrawal, and it has found nothing. Moreover, the settlement process was overseen by the district court in Massachusetts, and no one has contended that FDB breached the settlement agreement. *See NACDS*, 582 F.3d at 37-38 (describing the process leading to the approval of the settlement). Therefore, the Court finds that there is no material issue of fact that FDB withdrew from the conspiracy more than three years before Virginia filed its suit.

Accordingly, the Court finds that Virginia's claims against the individual defendants are barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the individual defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated: March 28, 2013

SUSAN ILLSTON
United States District Judge

6