IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE COMMONWEALTH OF VIRGINIA,<br><br>    Plaintiff,<br><br>   v.<br><br>McKESSON CORPORATION,<br><br>    Defendant. | No. C 11-02782 SI<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Defendant McKesson Corporation's motion for partial summary judgment, and plaintiff Commonwealth of Virginia's motion for partial summary judgment came on for oral argument on September 20, 2013. Both parties were ably represented by counsel. Having considered the parties' motion papers, pleadings and arguments, and for good cause shown, the Court DENIES both motions.

**BACKGROUND**

Plaintiff, the Commonwealth of Virginia, alleges that defendant McKesson, a prescription drug wholesaler, engaged in a conspiracy with First DataBank, Inc. ("FDB") to inflate the amount that Virginia's Medicaid program paid for brand-name prescription drugs. Compl. ¶ 1-2. The general subject of this litigation has been discussed in detail in several orders issued in connection with *In re: Pharmaceutical Industry Average Wholesale Price Litigation*, MDL-1456 (Hon. Patti B. Saris, D. Mass.).

Under the current pharmaceutical drug pricing structure, pharmacies buy drugs from wholesalers (such as McKesson) at the wholesale acquisition cost ("WAC") and are reimbursed for the distribution of the drugs by Virginia's Medicaid agency at the average wholesale price ("AWP"). *Id.* ¶ 4. The AWPs are compiled and published by data companies, including FDB. *Id.* ¶¶ 10-11. Virginia alleges that, starting in late 2001, McKesson constructed a scheme with FDB to mark up the AWPs of drugs to extract excess payments from Virginia's Medicaid agency to McKesson's pharmacy customers. Because the margin between the WACs and the AWPs represents the pharmacies' profits, this artificial mark-up resulted in increased profits for the pharmacies at Virginia's expense. *Id.* ¶¶ 15, 26, 41-42.

Beginning in March 28, 2005, David Morgan filed a class action complaint on behalf of the United States and several states, including the Commonwealth of Virginia, against Express Scripts, Inc. and FDB, entitled *United States of America, ex rel. Morgan v. Express Scripts, Inc. and First DataBank, Inc.*, No. 05-cv-1714 (D. N.J.), alleging an AWP markup scheme. On June 2, 2005, the same counsel which now represents Virginia filed a separate complaint against FDB and McKesson Corporation on behalf of private third-party payers, entitled *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, No. 05-11148-PBS (D. Mass.) ("*NEC*"), alleging a similar scheme. On November 30, 2006, the *Morgan* action was amended to include additional defendants, including McKesson Corporation, alleging conspiracy with FDB to mark up AWP's. On May 12, 2009, Virginia and McKesson entered into a Tolling Agreement whereby they agreed to toll any time-related defenses during the time span of the agreement. Berman Declaration in Opposition to McKesson's Motion, Ex. 7, p. 2. On June 3, 2011, Virginia filed a Notice of Non-Intervention in the *Morgan* case.

On June 8, 2011, Virginia filed a complaint in this court alleging seven causes of action against McKesson: civil violations of RICO (Counts I and II); violations of the Virginia Fraud Against the Taxpayers Act (Counts III, IV, VI); violations of the Virginia Fraud Statute (Count VI); and common law civil conspiracy (Count VII). Virginia asserted two claims against individual defendants Robert James and Greg Stephen Yonko, as agents of McKesson: violation of the Virginia Fraud Statute and common law civil conspiracy to defraud (Counts VI and VII). This Court determined on March 28, 2013 that the claims against the individual defendants were barred by Section 338 of the California Code of Civil Procedure, which provides a three year statute of limitations for fraud claims.

The Court now has before it cross motions for partial summary judgment. McKesson's motion for partial summary judgment argues that Virginia's Counts III, IV, and V, which claim violations of the Virginia Fraud Against Taxpayer's Act, are time-barred by Section 340 of the California Code of Civil Procedure. Virginia moves for partial summary judgment on several defenses McKesson intends to assert at trial, on the grounds they are invalid or unsupported by material facts sufficient to submit them to a jury.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *See T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49 (2d Cir. 1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

**I.   McKesson's Motion for Partial Summary Judgment – Statute of Limitations**

McKesson seeks an order that Virginia's claims under the Virginia Fraud Against Taxpayers Act ("VFATA") are time-barred under California Code of Civil Procedure Section 340(a). The Court previously determined that California law applies to the limitations question in this case, Docket No. 69, and neither party presently disputes the choice of law. The issue for resolution in McKesson's motion is which of California's statutes of limitations should be applied to Virginia's VFATA claims[1]: California Code of Civil Procedure Section 340(a), which establishes a one-year statute of limitations; or Section 338(d), a three-year limitations period.[2] McKesson argues that Virginia's VFATA claims are barred by Section 340(a)'s one-year limitations period, which expired in October 2007. Virginia contends that the three year statute of limitations under Section 338(d) applies.

Under California law, "[t]he applicable statute of limitations depends on 'the nature of the cause of action, i.e., the 'gravamen' of the cause of action.'" *E-Fab, Inc. v. Accountants, Inc. Svcs.*, 153 Cal. App. 4th 1308, 1316 (2007) (quoting *Hensler v. City of Glendale*, 8 Cal. 4th 1, 22 (Cal. 1994)). "The statute of limitations to be applied in a particular case is determined by the nature of the right sued upon or the principal purpose of the action, not by the form of the action or the relief requested." *Barton v. New United Motor Mfg.*, 43 Cal. App. 4th 1200, 1207 (1996). "Where more than one statute might apply to a particular claim, a specific limitations provision prevails over a more general provision." *E-Fab, Inc.*, 153 Cal. App. 4th at 1316.

Generally, an "action for relief on the ground of fraud or mistake" is subject to a three-year limitations period pursuant to California Code of Civil Procedure Section 338(d). In contrast, Section 340(a) provides a one year statute of limitations for actions "upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation." The applicable limitations period, under either Section 338(d) or

---

[1]   At the time of the event in question, VFATA had no statute of limitations of its own. As of 2007, the Act was amended to provide a six-year statute of limitations.

[2]   This court previously applied the § 338(d) three-year limitations period to Virginia's claims against the individual defendants under the Virginia Fraud Statute and the Conspiracy counts. Order re. Individual Defendants at 3.

United States District Court
For the Northern District of California

1   Section 340(a), is determined by the "nature of the right sued upon or the principal purpose of the
2   action." *Barton*, 43 Cal. App. 4th at 1207.

3   VFATA is based on the federal False Claims Act ("FCA") and mirrors the language of the
4   federal statute. *Ex rel. Johnson v. Universal Health Servs., Inc.*, 889 F.Supp. 2d 791, 793 (W.D.Va.
5   2012) (noting "the similarity of the language of the two statutes makes it clear that the Virginia General
6   Assembly intended to pattern the VFATA after the FCA"). VFATA provides:

> Any person who: 1. Knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval; 2. Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . shall be liable to the Commonwealth for a civil penalty of not less than $5,500 and not more than $11,000, plus three times the amount of damages sustained by the Commonwealth.

10  V.A. Code § 8.01-216.3.

11  Like the federal False Claims Act, the nature or gravamen of VFATA is prevention and
12  punishment of the false or fraudulent claims and actions against Virginia. *See U.S. v. Bornstein*, 423
13  U.S. 303, 309 n.5 (1976) ("According to its sponsor, the False Claims Act was adopted 'for the purpose
14  of punishing and preventing. . . frauds.'"). Accordingly, Section 338(d) should apply to this "action for
15  relief on the ground of fraud." Although VFATA includes liability for civil penalty, the "principal
16  purpose of the action" determines the applicable statute of limitations, not the "relief requested." *E-Fab,*
17  *Inc.*, 153 Cal. App. 4th at 1316; *Barton*, 43 Cal. App. 4th at 1207.

18  McKesson argues that since VFATA could fall within either Section 338(d) or Section 340(a),
19  the more specific one-year limitations period for "a statute for a penalty or forfeiture, if the action is
20  given to an individual, or to an individual and the state, except if the statute imposing it prescribes a
21  different limitation," should apply. McKesson Motion at 5. McKesson contends that VFATA is "a
22  statute for a penalty or forfeiture," and analogizes it to the California Private Attorneys General Act
23  (PAGA), a statute for which California courts have applied Section 340(a)'s one-year limitations period.
24  However, the nature and principal purposes of VFATA and PAGA are distinguishable.

25  As previously explained, like the federal False Claims Act, VFATA was enacted to prevent and
26  punish fraud on the government, and to recoup for the government "three times the amount of damages
27  sustained by the Commonwealth"; the focus is not on the individual. *See* V.A. Code § 8.01-216.3.
28  PAGA, in contrast, is focused on punishing violations of California's labor laws; it gives an aggrieved

5

employee "acting as a private attorney general" the power "to collect penalties from employers who violate labor laws." *Franco v. Athens Disposal Co.*, 171 Cal. App. 4th 1277, 1300 (2009). "Before PAGA was enacted, an employee could recover damages, reinstatement, and other appropriate relief but could not collect civil penalties. . . PAGA changed that." *Id.* Further, PAGA provides only for civil penalties, which are not remedial. *See Home Depot U.S.A. Inc., v. Superior Court*, 191 Cal. App. 4th 210, 225 (2010) ("Civil penalties are inherently regulatory, not remedial."). PAGA, a statute solely punitive in nature and giving action to an individual or an individual and the state, reasonably fits the requirements under Section 340(a).[3]

VFATA, however, is not such a statute. Persons or companies which violate VFATA with false or fraudulent claims "shall be liable to the Commonwealth for a civil penalty of not less than $5,500 and not more than $11,000, plus three times the amount of damages sustained by the Commonwealth." A claim under VFATA is thus "an action for relief on the ground of fraud or mistake," under Section 338(d).

Accordingly, McKesson's motion for partial summary judgment that Virginia's claims under VFATA are time-barred under the one-year limitations period of California Code of Civil Procedure Section 340(a) is DENIED.

## II. Virginia's Motion for Partial Summary Judgment

Virginia moves for partial summary judgment on three of the affirmative defenses McKesson intends to assert at trial: that Virginia's VFATA claims are barred by the doctrine of consent, ratification and unjust enrichment.[4]

---

[3] Likewise, California Health & Safety Code Section 25249.7, discussed in *Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967 (2003), provides only for civil penalties, does not contemplate damages, and is thus distinguishable from VFATA, which contemplates trebled damages alongside the available civil penalties. *See Shamsian*, 107 Cal. App. 4th 967; *see also* Cal. Health & Safety Code § 25249.7.

[4] McKesson has withdrawn its affirmative defense of waiver, without prejudice to its ability to assert the defenses of consent, ratification and estoppel. McKesson Opp. at 12. McKesson has also withdrawn its failure to mitigate defense as to Virginia's VFATA claims, only. *Id.*

6

### A. Consent and Ratification

Virginia contends, without any legal support, that McKesson's affirmative defenses of consent and ratification are not valid defenses to claims under VFATA. VA Motion, p. 9. McKesson argues these defenses are based on evidence that Virginia, throughout the purported damages period, knew what it was paying to pharmacies and accepted any overpayment. McKesson Opp. p. 13.

Neither party cites to any authority in the Commonwealth or federal courts of Virginia to support its position, nor do the parties provide references to case law analyzing the affirmative defenses available under VFATA. However, VFATA "directly parallels" the federal False Claims Act, so the federal statute may be instructive. *See e.g. Ex rel. Johnson.*, 889 F.Supp. 2d at 793.

The Ninth Circuit in *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1051 (9th Cir. 2012) noted that "[a]fter the 1986 amendments to the FCA, government knowledge is no longer an automatic bar to suit, [and as a result,] courts have had to decide case by case whether a FCA claim based on information in the government's possession can succeed." *Id.* (quoting *United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 326 (9th Cir. 1995) (internal quotation mark omitted) (alterations in original)). "[A]t the summary judgment stage or after trial, the extent and nature of the government knowledge may show that the defendant did not 'knowingly' submit a false claim and so did not have the intent required by the post-1986 FCA." *Hughes Helicopters, Inc.*, 71 F.3d at 327 (citing *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d at 1418-1419, 1421 (9th Cir. 1991)). But federal courts debate what precise "government knowledge" may negate the element of falsity under the False Claims Act. The U.S. District Court of Massachusetts in a prior AWP suit explained, "To prevail on a government knowledge defense, Defendants must produce admissible evidence that [the State] or its agencies knew the actual true facts, and that they ordered, asked for, approved, or decided as a policy matter to acquiesce in the Defendants' reporting of false prices." *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 685 F.Supp. 2d 186, (D. Mass. 2010) (citing *Massachusetts v. Mylan Laboratories*, 608 F.Supp. 2d 127, 148-49 (D. Mass. 2008)).[5]

---

[5] "Even those cases that have found government knowledge to negate the element of falsity have required that the government possess knowledge of the actual true facts of the claim, not simply knowledge that the claim is generally false; some have further required that the government actually approve those true facts." *Mylan Laboratories*, 608 F.Supp. 2d at 148-49.

7

**United States District Court**
For the Northern District of California

1        Virginia maintains there is no evidence in the record of any ratification by Virginia's Medicaid
2 Fraud Control Unit ("MFCU"), which it asserts is the only governmental authority authorized to ratify
3 false Medicaid claims. VA Motion, p. 11; VA Reply, p. 3. McKesson contends that Virginia had
4 specific knowledge of how much Medicaid providers paid to acquire drugs; how much it was
5 overpaying pharmacies; the changed relationship between WAC and AWP; the alleged inflation by
6 FDB; and all allegations included in the complaint against McKesson. McKesson Opposition, p. 13.
7 McKesson points to evidence that Virginia was aware that the Virginia Maximum Allowable Costs were
8 often substantially higher than the acquisition cost of the drugs and that historically, it was substantially
9 overpaying for the drugs purchased for the State's Medicaid recipients. Flum Declaration in Opposition
10 to Virginia's Motion, Ex. 14, ¶. 3-4. McKesson also points to evidence that Virginia knew price
11 increases were potentially "driven by the pricing strategies of the drug companies and pharmacists."
12 *Id.*, p. 5. The Court concludes McKesson has raised genuine issues of material fact as to Virginia's
13 knowledge of the drug price inflation. The extent of Virginia's knowledge as to "the actual true facts"
14 and the determination of whether Virginia actively approved of the underlying facts must be determined
15 by a finder of fact at trial.

17       **B.**     **Unjust Enrichment**
18        In its answer, McKesson asserted Virginia would be unjustly enriched if it were permitted to
19 obtain relief in this action. Answer, p. 52. Virginia argues McKesson's unjust enrichment defense is
20 barred by the one satisfaction and collateral source rules. VA Motion, ¶. 11-12. McKesson contends
21 Virginia has not met its burden to show the defense of unjust enrichment does not depend on questions
22 of material fact, so summary judgment should be denied. McKesson Opposition, p. 17.

23        McKesson's theory is that Virginia received a windfall when AWPs fell to 20% above WAC
24 after the FDB rollback in connection with the *NEC* settlement. McKesson Opp., p. 16. As a result,
25 McKesson reasons, Virginia accepted the benefit of the rollback on drugs that are now at issue in the
26 present suit. And so, according to McKesson, Virginia's claimed damages in the present case should
27 be offset by the benefit already received. *Id.* Virginia maintains it seeks damages only for losses the
28 Virginia Department of Medical Assistance Services sustained before the FDB rollback, so there are no

common damages between what Virginia now seeks and the benefit FDB provided under the *NEC* settlement. VA Motion, p. 11.

The Supreme Court in *United States v. Bornstein*, 423 U.S. 303, 316-17 (1976) reasoned that when "computing the double damages authorized by the [False Claims] Act, the Government's actual damages are to be doubled before any subtractions are made for compensatory payments previously received by the Government from any source." Thus, there is the possibility of offset for damages awarded for false claims, if there are compensatory payments previously received by the government from other sources.

The questions of whether the rollback was independent of the *NEC* settlement and whether Virginia obtained a windfall are disputed issues of material fact that should be determined at trial. McKesson has provided evidence that the rollback was the result of the settlement, *see* Flum Declaration in Opposition to Virginia's Motion, Exs. 32, 33, 34, and Virginia was aware of the resulting windfall, *see Id.*, Ex. 30. The Court concludes there are disputed issues of material fact and summary judgment cannot be granted to Virginia on this issue.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES McKesson's motion for partial summary judgment and DENIES Virginia's motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: September 20, 2013

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE